UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BACARELLA TRANSPORTATION SERVICES, INC., : <br> Plaintiff, : <br> : <br> v. : <br> : <br> RIGHTWAY LOGISTICS, LLC, : <br> MICHELLE ULERY, and : <br> ICAT LOGISTICS, INC., : <br> Defendants. : | Case No. 3:08-CV-1487 (PCD) |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants Right Way Logistics, L.L.C. ("Right Way"), Michelle Ulery ("Ulery"), and ICAT Logistics, Inc. ("ICAT") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts Two, Three, Four and Five of Plaintiff Bacarella Transportation Services, Inc.'s ("Bacarella") Complaint. For the reasons that follow, Defendants' Motion to Dismiss Counts Two through Five [Doc. No. 14] is **granted.**

**I.   Background**

Taking the allegations in the Complaint as true for purposes of the Motion to Dismiss, the facts are as follows. Right Way provided transportation services for Plaintiff from approximately May 2004 through December 2007. The relationship between Plaintiff and Right Way was subject to the Transportation Services Agreement ("Agreement"). The Agreement provided that the Agreement "shall become valid" when Plaintiff accepted it and notified Right Way of its acceptance. (Agreement, ¶ 21.) Plaintiff accepted the Agreement and sent a copy of the Agreement to Right Way on or about May 24, 2004. (Compl. Count One, ¶ 7.) The Agreement was effective through the third anniversary from the date of acceptance and then continued on a year-to-year basis, provided that either party could terminate the Agreement without cause on 60


Case 3:08-cv-01487-DJS   Document 27   Filed 02/10/09   Page 2 of 9

days prior written notice. (Agreement, ¶ 14.)

On approximately January 3, 2008, Right Way permanently ceased performance under the Agreement and began doing business with Plaintiff's rival company ICAT. On approximately January 29, 2008, President and managing member of Right Way, Michelle Ulery, terminated the agreement with Plaintiff by way of a signed letter. The forgoing constitutes Plaintiff's claim for breach of contract as to Defendant Right Way (Count One). Defendants have not moved to dismiss the breach of contract claim.

Plaintiff also makes claims for tortious interference as to Right Way (Count Two), Ulery (Count Four), and ICAT (Count Five). In addition to incorporating the facts above, Count Two for tortious interference as to Right Way sets forth the following allegations: Plaintiff had a business relationship with customers during the time it had a business relationship with Right Way, Right Way was aware of and familiar with Plaintiff's business relationships with its customers, Right Way "intentionally interfered with the business relationships between Plaintiff and its customers while knowing of these relationships" (Compl. Count Two, ¶ 20), and Plaintiff suffered actual economic losses as a result of Right Way's interference.

In addition to incorporating the facts above, Court Four for tortious interference as to Ulery sets forth the following allegations: Ulery was employed by Right Way as a managing member and President, Ulery solicited and conducted business in Connecticut, and the actions taken by Ulery related to the breach of the Agreement "were unauthorized and/or beyond the scope of her power or authority as managing member and President of Right Way." (Compl. Fourth Count, ¶ 3.)

In addition to incorporating the facts above, Court Five for tortious interference as to

days prior written notice. (Agreement, ¶ 14.)

On approximately January 3, 2008, Right Way permanently ceased performance under the Agreement and began doing business with Plaintiff's rival company ICAT. On approximately January 29, 2008, President and managing member of Right Way, Michelle Ulery, terminated the agreement with Plaintiff by way of a signed letter. The forgoing constitutes Plaintiff's claim for breach of contract as to Defendant Right Way (Count One). Defendants have not moved to dismiss the breach of contract claim.

Plaintiff also makes claims for tortious interference as to Right Way (Count Two), Ulery (Count Four), and ICAT (Count Five). In addition to incorporating the facts above, Count Two for tortious interference as to Right Way sets forth the following allegations: Plaintiff had a business relationship with customers during the time it had a business relationship with Right Way, Right Way was aware of and familiar with Plaintiff's business relationships with its customers, Right Way "intentionally interfered with the business relationships between Plaintiff and its customers while knowing of these relationships" (Compl. Count Two, ¶ 20), and Plaintiff suffered actual economic losses as a result of Right Way's interference.

In addition to incorporating the facts above, Court Four for tortious interference as to Ulery sets forth the following allegations: Ulery was employed by Right Way as a managing member and President, Ulery solicited and conducted business in Connecticut, and the actions taken by Ulery related to the breach of the Agreement "were unauthorized and/or beyond the scope of her power or authority as managing member and President of Right Way." (Compl. Fourth Count, ¶ 3.)

In addition to incorporating the facts above, Court Five for tortious interference as to

ICAT sets forth the following allegations: ICAT "intentionally interfered with the business relationship" between Plaintiff and Right Way (Compl. Count Five, ¶ 18), ICAT intentionally interfered with Plaintiff's business relationships with its customers while knowing of those relationships, and as a result of ICAT's interference Plaintiff suffered economic losses.

Plaintiff also makes a claim for breach of the implied covenant of good faith and fair dealing with respect to Defendant Right Way (Count Three). In addition to incorporating the allegations relating to the Agreement between Plaintiff and Right Way, Plaintiff alleges that it "reasonably expected to receive financial benefits" from the Agreement, that Right Way engaged in conduct that injured Plaintiff's right to receive "some" of the financial benefits, and that Right Way acted in "bad faith" when engaging in conduct that injured Plaintiff's right to receive financial benefits. (Compl. Count Three, ¶¶ 8-10.)

## II.     Standard of Review

The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted). Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). In ruling on a motion under Rule 12(b)(6), the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (declining to read Twombly's 'flexible plausibility standard' as relating only to antitrust cases). A plaintiff is obliged to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible. Jackson Hill Rd. Sharon CT, L.L.C. v. Town of Sharon, 561 F. Supp. 2d 240, 244 (D. Conn. 2008), citing Iqbal, 490 F.3d at 157-58.

### III.  Discussion

**A. Tortious Interference**

Defendants move to dismiss Counts Two, Four, and Five, which allege tortious interference as to Right Way, Ulery, and ICAT, respectively, on the basis that Plaintiff has failed to state a claim upon which relief can be granted. "The essential elements of...[a tortious interference] claim include...the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." Indiaweekly.com, L.L.C., v. Nehaflix.com, Inc., 2009 WL 189867, at *6 (D. Conn. Jan. 27, 2009), quoting Solomon v.

Aberman, 196 Conn. 359, 365 (1985).

However, not every "act that disturbs a contract or business expectancy is actionable." Blake v. Levy, 191 Conn. 257, 260 (1983). Therefore, a claim for tortious interference cannot simply rest on the three elements noted above. See id. at 262 ("[t]he plaintiff argues that in order for his claim to be legally sufficient he need only plead the existence of a business relationship, the defendant's interference and the plaintiff's resulting loss...this approach incorrectly relegates the central determination of whether the defendant's behavior was improper to an affirmative defense" (citations omitted)). A plaintiff has a further obligation to show that defendant's alleged interference was itself tortious. Id. ("[a] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself").

It is therefore crucial for a plaintiff bringing a tortious interference claim to plead and "prove that the defendant's conduct was in fact tortious." Blake, 191 Conn. at 261; Toro v. Arnold Foods Co., 2008 WL 4000632, *2 (D. Conn. Aug. 8, 2008) (stating that a "plaintiff must show that the defendant committed tortious conduct"). "That means the plaintiff must show that the defendant committed fraud, misrepresentation, intimidation, or molestation, or that the defendant acted maliciously." Toro, 2008 WL 4000632 at *2, citing Weiss v. Wiederlight, 208 Conn. 525, 536 (1988). Malice is not simply intentional interference; malice means intentional interference without justification. Toro, 2008 WL 4000632 at *2, citing Daley v. Aetna Life and Cas. Co., 249 Conn. 766, 806 (1999). At a minimum, a plaintiff must "plead and prove at least some improper motive or improper means . . . beyond the fact of the interference itself." Jackson Hill Rd. Sharon CT, L.L.C. v. Town of Sharon, 561 F. Supp. 2d 240, 244 (D. Conn. 2008), quoting Blake, 191 Conn. at 262.

In each of the Plaintiff's three tortious interference claims (Counts Two, Four and Five), Plaintiff has essentially just recited the elements of a claim for tortious interference, without providing any sense of what actions Defendants are alleged to have taken that constituted fraudulent, malicious or otherwise tortious conduct beyond the allegation of the interference itself. For example, Plaintiff's allegations in Count Two consisted of stating that Right Way and Plaintiff stopped doing business on or about January 3, 2008; that Right Way began doing business with ICAT; that the Plaintiff had business relationships with customers; that Right Way was familiar with these relationships, that Right Way intentionally interfered with these relationships while having knowledge of the relationships; and that as a result Plaintiff suffered actual economic loss. (Compl. ¶¶ 16, 18-21.)  In claims for tortious interference that have survived motions to dismiss, plaintiffs have at minimum alleged some fact, above and beyond intentional interference, that would permit a court to infer the requisite tortious conduct. Compare Indiaweekly.com, L.L.C., v. Nehaflix.com, Inc., 2009 WL 189867, at *6 (D. Conn. Jan. 27, 2009) (denying a motion to dismiss because misrepresentation by Indiaweekly could be inferred from the allegation that the moving party placed stickers with Indiaweekly's logo over the Nehaflix logo on the DVDs that Indiaweekly shipped from Bollywood) and Modis, Inc. v. Bardelli, 531 F. Supp. 2d 314, 320-22 (D. Conn. 2008) (denying a motion to dismiss because the plaintiff had alleged that the defendant had a scheme "to convert, conceal, and misappropriate" plaintiff's trade secrets in order to unfairly compete with the plaintiff, with further allegations on how the defendant utilized plaintiff's e-mail system and databases for her own purposes causing harm to the plaintiff), with Toro, 2008 WL 4000632, at *2-3 (dismissing tortious interference claim because plaintiff's amended complaint contained the simple allegation that the defendant

"has conducted a campaign to tortuously [sic] interfere with [Toro's] contractual and advantageous relations with potential employers by [making] untrue and inflammatory statements ... regarding Toro's character and work record," with no allegations that the defendant acted maliciously, intentionally without justification, or that the statements constituted molestation or intimidation).

Counts Two, Four and Five are devoid of any allegation of improper motive, improper means, or otherwise tortious conduct, and the mere allegation of knowing or intentional interference is insufficient. Plaintiff's Counts Two, Four and Five for tortious interference as to Right Way, Ulery, and ICAT are dismissed.

**B. Good Faith and Fair Dealing**

Defendants move to dismiss Count Three, which alleges breach of the covenant of good faith and fair dealing as to Right Way, on the basis that Plaintiff has failed to state a claim upon which relief can be granted. Under Connecticut law, "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gupta v. New Britain Gen. Hosp., 239 Conn. 574, 598 (1996) (internal quotation marks omitted); Landry v. Spitz, 102 Conn. App. Ct. 34, 46 (2007). "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2005) (internal quotation marks omitted). "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably

expected to receive under the contract must have been taken in bad faith." Id. (internal quotation marks omitted); see Van Dorsten v. Provident Life and Acc. Ins. Co., 554 F. Supp. 2d 285, 287 (D. Conn. 2008) (a claim for the breach of the implied covenant of good faith and fair dealing requires the plaintiff to prove that: "(1) two parties entered into a contract under which the plaintiff reasonably expected to benefit; (2) the benefit was denied or obstructed by the other party's actions; and (3) the other party's actions were taken in bad faith"). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.  Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237-38 (1992) (citations omitted).

Plaintiff has merely recited without factual elaboration the elements of the claim for breach of the implied covenant of good faith and fair dealing.  In Count Three, Plaintiff simply alleged "bad faith" but did not expound on this contention in any manner or offer any factual allegations suggestive of bad faith on Defendant Right Way's part. (Compl. ¶ 10.)  In claims for breach of the implied covenant of good faith and fair dealing that have survived a motion to dismiss, plaintiffs have alleged some fact, above and beyond the breach of the contract, that would permit a court to infer bad faith. See e.g., Modis, Inc., 531 F. Supp. 2d at 320-21 (alleging a scheme "to convert, conceal and misappropriate" and providing facts on how defendant went about implementing that scheme); Colon v. Commonwealth Annuity and Life Ins. Co., 2008 WL 2185923, *2 (D. Conn. May 22, 2008) (plaintiff alleged that defendants "intentionally 'ignored' or disregarded her medical records and relevant facts regarding her occupation and disability in

making their decision on her claim under the disability policies"); Van Dorsten, 554 F. Supp. 2d at 287-88 (finding that the plaintiff sufficiently alleged bad faith by alleging that defendant "willfully ignored the statements and medical records submitted by Plaintiff without having any principled basis for doing so," "relied on a record review conducted by 'unqualified persons lacking expertise in the medical conditions that were disabling Plaintiff,' and 'willfully and with the intention of unjustifiably denying benefits ignored the conclusions of its own independent medical examiner'"). Defendants' motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing is granted.

### IV.   Conclusion

The Court also notes that Plaintiff's window, pursuant to the Court's scheduling order, to amend the complaint did not expire for more than three weeks after Defendants filed this motion to dismiss. Plaintiff did not avail itself of the opportunity to amend its complaint with more specific allegations regarding the tortious conduct or bad faith of Defendants. Plaintiff appears to be attempting to turn an ordinary breach of contract claim into a series of tort claims without pleading the relevant factual underpinnings.

For the reasons stated above, Defendants' Motion to Dismiss Counts Two through Five [Doc. No. 14] is **granted.**

SO ORDERED.

Dated at New Haven, Connecticut, this 10th day of February, 2009.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court